And I'll let everybody know that after the first argument this morning, the court will take a brief recess to reconstitute the panel. And so, we'll begin with Mr. Vishnesky. Good morning. Good morning, Your Honors. May it please the Court. We are here today to talk about an insurance policy issued by Factory Mutual to a hospital during COVID that was on the front lines of the pandemic and had to stay open and, as a result, had SARS-CoV-2 the virus that causes COVID-19 throughout its facility, causing tremendous costs and damage to freighters. Let's get right to it. This case is different from other cases where courts are deciding whether there's physical loss or damage from COVID in a vacuum. Here, Factory Mutual, which purports to issue the broadest coverage in the industry, defines communicable disease as physical loss or damage. And let's keep in mind what the procedural posture of the case is. This was on a motion to dismiss, and it's an insurance coverage case. So, the standards are, if the policyholder has a reasonable interpretation of the policy, even if the insurance company has a reasonable interpretation of the policy, it is interpreted in favor of the policyholder. It's also a motion to dismiss. All a freighter has to do is to plead facts which state a plausible case for relief. So, with those standards and a policy that defines communicable disease as physical loss or damage, the bar is very low for freighters, and the bar is very high for Factory Mutual. Mr. Vishnesky? Yes, sir. As I see it, we don't have a whole lot of time, so let me just try to set this up. As I understand it, you have to hit three or four different targets here, right? First, you have to persuade us that the contamination of this disease counts as physical damage under the policy. And I understand your point about what seems to me to be unique language in all these cases. Then you've got to deal with contamination exclusion and the loss of use exclusion. If we agree with you on all three of those, why aren't you still limited to the million-dollar sublimit for the response to communicable disease coverage? The short answer is that communicable disease response coverage listed under additional coverages is not an exclusion. It's an additional coverage. It provides things that the main coverage doesn't provide. It provides for reputation, damages, PR coverage, PR-type coverage. And like the civil and military authority additional coverage, it provides for additional costs that the insured incurs because there is an order, either of the civil or military authority or, well, in the case of communicable disease response, civil authority or an officer of the company. And those things can be very different. That's why, for example, in the civil and military authority coverage, it's not an exclusion. Nobody would argue that policy is limited to the sublimits for the civil and military authority additional coverage. It's additional because what you might do as freighter without an order from a civil authority or somebody whose job it is as an officer to issue what the standards are, it may be very different. And the insurance company was certainly pushing for something cheaper. But if the order says, you know, keep everybody off for three months or don't do certain surgeries that are elective for X amount of time, that's going to impose more costs than a rational decision maker might make otherwise. That's why there are additional coverages. Why not think about it as an exception, a limited exception to what seems to be a broad exclusion for contamination? What's wrong with that line of thinking? There's a couple things wrong with it. One is that when Factory Mutual wants to say that an additional coverage is an exception to an exclusion, it says that. A perfect example is in the enforcement of any law or ordinance exclusion. That exclusion specifically says except for coverages provided by decontamination costs and law and ordinance coverages. It uses that coordinating language. And it does it in different ways. It does it both in the exclusion sometimes. And sometimes the additional coverages say that this exclusion doesn't apply. Well, that's one way you could draft it, right? But we do want to try to read the policy as a whole. And one of the things that I've struggled with is the contamination exclusion. I mean, it's broad. It is. It's broad. And that definition, of course, as you know, picks up a virus. Well, the problem with the contamination exclusion is that it is overly broad. For a policy that very overtly and specifically provides for communicable disease coverage, even if you considered it just as the additional coverage, that exclusion would wipe it out. Two's Funeral Home, the Nautilus case. This court has repeatedly said that when an insurance company puts it in exclusion, that swallows specifically granted coverage. You know, Two's Funeral Home, it was coverage for intentional torts like defamation and slander. But they have an exclusion for unexpected, unintended or expected and intended losses. And the court said that's – nobody could understand what that means. I think a rational, consistent reading of the policy is that the contamination exclusion should be limited to not cover the communicable disease. And that's what the Sacramento court in California found. They said, you notice in the contamination exclusion it has an exception for otherwise covered physical loss or damage. And it pointed to the fact that the policy defined communicable disease as an otherwise covered physical loss or damage. It said that comes within an exception to the exclusion. So there's a couple reasons why that exclusion doesn't apply. And even if you get past that, there's – for the contamination exclusion to do for other kinds of contamination other than communicable diseases, right? Sure, even other viruses. Could – does the record tell us how much of a premium your client paid for this policy every year? Ah, I knew that. It's in the record because it's in the policy right on the front. Oh, well. But I don't – It's not that, but I – I don't recall off the top of my head. But it's an expensive policy. It's a $2 billion limit policy that's part of a $4 billion program. And it's, you know, you buy factory mutual when you want the best. You go for the Cadillac. You're not looking for the minimum coverage. That's why they have 31 additional coverages under the additional property damage coverage. I take your point that this is a motion to dismiss. How is this case going to look different if we send it back and it's now before the court on summary judgment? I mean, what more does the court need to sort this out that the court didn't already have now and that we don't have now? Well, if – unless there is a legal, you know, absolute, not plausible interpretation, it's possible that we could have discovery as to what factory mutual thinks about this. And that's been happening in other cases like the Cinemark case. We know, for example, we've talked about in our brief that factory mutual approved a motion to eliminate in a case against another insurance company, saying that mold in a clean room is a cover of physical loss or damage. And citing all the cases that you see cited by policyholders about ammonia and about smoke and about odors. So factory mutual, I think there's a lot of – there might well be a lot of drafting history evidence about this, some of which I've seen, that supports further the interpretation that Frater has of the policy. And remember, for a motion to dismiss, it's is it plausible. When we get summary judgment, it's going to be, well, what about – what's the right interpretation? And there will be – Are you sure you want to concede that? Well, I guess we'll cross that bridge when we come to it. But I do think if there is a finding of ambiguity, there is the opportunity to have extrinsic evidence. I'm not as strict. You just lose if you're the insurance company all the time person. Do you want to reserve some time for rebuttal? I'll reserve. Yes, thank you. Okay, very well. We'll hear from factory mutual. Good morning. George Mastoris, Factory Mutual Insurance Company. So I want to start with a couple of points. Obviously, Frater's argument here hinges entirely on the supposedly unique nature of FM Global's policy. And they're right. FM Global offers a coverage, which many other insurance companies – not all, but many do not offer – which is communicable disease, interruption by communicable disease, and communicable disease response. And the reason they offer those coverages is because they recognize, and this court has recognized, and the Wisconsin Supreme Court has recognized, that the mere presence of a communicable disease like COVID-19 does not and cannot cause physical loss or damage. Is it correct, Mr. Mastoris, that this policy purports to cover only physical loss or damage? No, that is not correct. That seems to be the language at the beginning. There is language to the effect that it covers all risks of physical loss or damage. And certainly the additional coverage section makes reference also to physical loss or damage. But there are several coverages in the policy, and you have to read the policy as a whole, as you mentioned earlier. There are several coverages in the policy which do not require physical loss or damage. Interruption by communicable disease is one of them, and communicable disease response is another. Claims preparation costs is another, and there's one for lost payment tax liability. I understand your point. One of the concerns that I have is, if you go back to, say, our court's decision in Sandy Point Dental, frankly it was a close case, and billions and billions of dollars of insurance coverage nationwide turn on that scope of physical loss or damage. But it was a close question because of the gas infiltration, the odor cases, the ammonia cases, the asbestos cases. And here in your policy, we've got this language that indicates the additional coverages are for physical loss or damage and include communicable disease. That doesn't seem like an outlandish stretch. Well, I think that if you look at that language in isolation, as Frederick urges, it might not be an outlandish stretch. However, you have to read the policy as a whole. And Frederick's interpretation reads out of the policy entirely several provisions, several conditions to coverage. It also reads out of the policy the language in 20 of 23 of the additional coverages that they cover physical loss or damage. But why then have the prefatory language? And why should that not be held against factory mutual as the drafter? It would have been just as easy not to include the prefatory language. Then Frederick wouldn't have an argument at all. I agree there wouldn't be an argument at all. I don't think there's much of an argument here, though, either, Your Honor. And that's because if you look at the prefatory language, it also says that it has to be read with the other policy's provisions in mind, including exclusions and deductibles. And we'll get to the contamination exclusion also. Because even if this court were to find there might be some doubt about whether or not the policy deems this to be physical loss or damage, I would submit that the contamination exclusion takes care of that. But going back to your question, there's also the point that the additional coverages are truly additional. And the problem with Frederick's interpretation is that if, in fact, a communicable disease, right, a common cold, a flu, measles, mumps, what have you, is automatically deemed to be physical loss or damage, there's no communicable disease interruption claim left. You can never have one. Because that, if you'll look at that, that's I think it's Appendix 106. The interruption by communicable disease has three criteria. One is that you need the presence, the actual presence of a communicable disease on site. Two, you need a shutdown, which is caused by an order of the government or a directive of the insurer. Where are you reading from again? It'll help just to see it.  It's 102, not 106. Yeah. Yes, it's Appendix 102. I apologize. So it has three criteria. There's a shutdown, there's the actual presence, and the shutdown has to last for 48 hours. If in fact, as Frederick argues, the mere presence of a communicable disease automatically constitutes physical loss or damage, this $1 million supplement would never kick in. Because this particular provision covers exactly the same thing as the core grant of coverage under Time Element. It covers actual loss sustained, it covers extra expense. So if by definition, which is what Frederick is arguing, the mere presence of someone with a cold on premises is physical loss or damage, you never get this $1 million supplement, ever. You're always entitled to the larger $2 billion grant of coverage. That's unreasonable, right? That reads that entire provision out of the policy. As Chief Judge Sutton said recently in one of these cases, though, it wouldn't be an insurance policy if it didn't have some redundancy, right? Well, I don't know if there's redundancy here so much in that there's a supplement for a reason. And there's literally no factual scenario in which that supplement applies if Frederick's theory is correct. It just doesn't exist. It would never apply, and it's a basic canon of construction of contracts and of policies. You can't have an entire provision which is rendered utterly superfluous. This would never apply because the moment you have a shutdown for one minute because someone has a cold on your premises, you're entitled to the core grant of coverage under Frederick's theory. You're entitled to $2 billion. You would never have to meet these other two criteria. That can't be the case. That's also, however, a completely unrealistic prospect, right? Well, it's – sorry, Your Honor. Could I ask you if we get to the issues of the exclusions? Sure. The problem – one of the problems I have in looking at this policy is that the exclusions say they are subject to the rest of the policy, and the additional coverages say they are subject to the exclusions, right? So each is limited by the other. And I'm reminded a little bit of the scarecrow and the Wizard of Oz pointing in both directions at once. How do we sort that out so that it's clear beyond reasonable doubt to an insured how to resolve that tension within the policy? Well, I think it's laid out clearly in the policy, right? We're talking about a policyholder here which knows that they're supposed to read the entire policy as a whole. And the fact of the matter is those two provisions are very easily harmonized to the extent that there is some sort of communicable disease which could cause physical loss or damage, right? And that seems, just stepping back, a bit of an unreasonable proposition to think that if anyone has a cold in this courtroom, this courtroom is being physically damaged. But to the extent that actually exists, the contamination exclusion says, look, viruses, pathogens, pathogenic organisms, disease-causing agents, illness-causing agents, all that is out, right? You can't have those things. You can't recover for damage caused by those things, even if it is physical loss or damage, right? And then you've got this other limited grant of coverage which adds some of it back in. It says, well, look, even if you fall within this… Right, but it's subject to the exclusion, right? Well, I think that they have to be harmonized, right? You have to read the policy as a whole to try to give effect to its provisions. Even under the Tavis Funeral Home case, right, where there is a conflict. Let's assume it's a conflict and not an exception to an exclusion, which Frederick's brief makes a big point of. Even if it's a conflict, you have to read it in favor of that specific grant of coverage, not of some other coverage in the policy. The specific grant of coverage here is the communicable disease response and the interruption by communicable disease provisions. So a policyholder, any reasonable policyholder, would look at that and say, okay, I get coverage for these two provisions, which is exactly what happened here, right? FM Global paid Frederick $1 million, the sublimit, for those two coverages. To do that, to pay the sublimit, did your client have to conclude that that additional coverage for the communicable disease response was for insured physical loss or damage? No. In fact, it concluded the opposite. There was no physical loss or damage. The reason this additional coverage exists is precisely for situations like this one, to not leave hospitals like Frederick high and dry, to not leave other buildings… So how do you make any sense out of the prefatory language? I mean, you know it better than I do, right? Additional coverage is for insured physical loss or damage, and then it proceeds to enumerate them. Right. So you would think if there's a payment pursuant to F, right, that it's for what's been deemed or decided to be a physical loss or damage. Well, so first of all, it doesn't say that each and every one of the additional coverages afterwards necessarily constitutes physical loss or damage. But it does say the following. It does say the following, but it doesn't say all of the following for one thing. And second, you have to look at the language of those coverages themselves, right? Because those coverages, 20 of them refer specifically to physical loss or damage. All of that verbiage would be superfluous, right, if in fact it was covered by the prefatory language. And likewise, the absence of that physical loss or damage language from the communicable disease response and the other two coverages, claims preparation costs and tax liability, also has to mean something. And in fact, you know, that claims preparation costs and tax liability is another reason, you know, why this court should affirm here. And the fact is those coverages exist and do not require physical loss or damage precisely because there are coverages in the policy which also not require physical loss or damage. It would be inequitable to say to someone who recovers under the CD claim like Frater, you can't get your claims preparation, but everyone else can because of physical loss or damage. Is this still the policy in effect or has factory mutual rewritten this? This is still the policy that's in effect. And factory mutuals continue to pay out even where there's a lot lack of physical loss or damages. There has been in every other COVID, every one of the COVID cases that factory mutual has adjusted. One more point, if I may, Your Honor. Two other provisions which are written out of the policy, I believe, by Frater's interpretation that I would urge the panel to look at are the period of liability provision, which ties physical loss or damage. I'm sorry, which? The period of liability provision, which is very similar to the period of restoration provision in Sandy Point. And I can guide the panel to where that is. It's Appendix 90 to 91. Okay. What's the point you want to make on it? The point is that also ties physical loss or damage to the need to repair or replace. And that's something which is in the policy. Physical loss or damage can't mean two different things under the policy. And here it's tied specifically to repair or replace, which was this court's ruling in Sandy Point and other cases, and also factoring to the Wisconsin Supreme Court's decision in Colectivo. The same point is actually evident from the valuation section of the policy, which is at Appendix 62, which, again, lists a whole number of ways in which the claim can be valued. And one of those ways in which a claim can be valued, again, specifically ties physical loss or damage to the need to repair, rebuild, or replace. And so we can't just look at the additional coverage as language in isolation. So how does that apply, let's say, to the public relation expenses under the response provision? So I think if we look at – well, if we look at communicable disease response, there's two things that are covered there specifically, right? One is public relations, and I do think that is additional no matter what. Okay, I'll concede that point. However, there's also in that same provision coverage for cleanup, disposal, et cetera. So, again, under Frederick's theory, if in fact the mere presence of the virus, the mere presence of the disease on site, were physical loss or damage, that provision also would be superfluous. Because there's a debris removal, which covers contamination caused by other insured physical loss or damage. There's a decontamination cost. So those costs that are covered under communicable disease response and are sublimated to $1 million, they would no longer be sublimate. They would be subject to a limit of $2 billion. That's Frederick's reading. It reads out half of the communicable disease response provision. It does so, though, in a way that expands coverage for this very, very generous broad policy. By the way, can you tell us how much the premium was for this? I believe it was – I don't know the answer, so I don't want to hazard a guess. I apologize. It is – I don't think it expands coverage because, as Frederick concedes in his brief, and I think is typical of insurance policies, the $2 billion cap is a $2 billion cap. It's not like there's a $1 million above that that becomes part of the cap. So here, interruption by communicable disease under Frederick's theory, if communicable disease is physical loss or damage, the $1 million sublimate can never apply. You're just at $2 billion the whole time. That provision no longer exists in the policy. And half of communicable disease response no longer exists. That $1 million sublimate never applies. It can't because those cleanup costs are covered by other provisions. So I'm not – if the panel has further questions, I'm happy to answer them. Okay. Thank you very much. Thank you very much. Mr. Brzezinski, we'll give you three minutes for rebuttal just to keep everything balanced here. Let's go right at this idea of reading things out of the policy. First of all, on the period of liability, my opponent could not clearly be more wrong. This policy, the Cadillac of policies, has two valuation provisions. One is gross earnings, which is tied to repair or replace. And the other is gross profit. You can find it in Appendix 85, which is specifically not tied to repair or replace, which is unusual. In policies like in the Collectivo case and in Sandy Point, they are limited to that. But in the expansive policy of factory mutual, the gross profit is determined by starting when the accident first happens, the loss event first starts happening, and until it is resolved and you stop having a loss or 365 days. And you'll notice that in the additional coverage for communicable disease, that's also what the valuation provision is specifically mentioned in that provision. Also, Friedrich's interpretation does not read out the communicable disease coverage by making it somehow redundant. That's like saying the civil and military authority provision reads out coverage because it's triggered by physical loss or damage on the property, also off the property, but on the property, and then provides additional coverage for when the order makes you do something you otherwise wouldn't do, which would not be covered by the main coverage clause, and gives you additional coverage up to that sublimit for things like PR, which is appropriate for the kinds of things that we're talking about here. But in no way does it read that out. I think that's a pretty high… And what's your response to Mr. Mistoris' point that in about 20 of the other additional coverage provisions, there's specific inclusion of that physical loss or damage language, but in a few, including the one we're focused on here, there's not? Right. So just as a structural matter, what's the proper takeaway from the way the policy is drafted across those additional coverage items? It's just consistent that all of those additional coverages, and there's actually 31 of them, have a physical loss or damage time, including communicable disease one, actual presence of communicable disease on the property. But take, for example, there's a coverage for when there's imminent physical loss or damage, and that you have to move patients. Remember, this is a hospital policy. There are specific things on here for the hospital. There's imminent physical loss or damage at a facility, and there's costs to packing up those patients and taking all their stuff somewhere else. Well, is imminent physical loss or damage alteration of property? No. There is a tie, but there is something expansive about each one of those additional coverages, whether it is a kind of loss that's not covered by the main policy period, or clearing up an issue that otherwise would exist. Take the data restoration loss coverage in the policy. We had years of coverage. I've been doing this for a long time, where we were fighting about whether loss of data is physical loss or damage. Some courts said yes. Some courts said no. Some courts said all you get is the physical disk or the computer, but not the loss. So what does the Cadillac of policies do? It says, we cover data restoration loss, and then it defines it in such a way that makes it so clear that it's not physical loss or damage in the sense of alteration of property. It's just loss because somebody hacks you and you've lost your data. So policies deem something that might be controversial otherwise to be this or that to resolve the issue. And Dr. Mitchell does it the other way. They do it with the year 2000 stuff. That was controversial. They deem it to be not. Okay. Any further? Any closing comment? Just one closing comment. We never got to the point. If you get past all of this and you're trying to apply the contamination exclusion, this is the case where we've really, in the complaint, explained in great detail why the approximate cause of the Kramer case in Wisconsin applies that there is negligence of governments that is a prior cause and a covered one that's in the chain of causation here. The perfect case, we've cited the Justin case out of Massachusetts, was an environmental case where there was negligence in putting oil, home heating oil, into a neighbor's property. And then that oil moved across to the insured's house and caused damage to their property. Did the environmental contamination exclusion apply? No. Because the concurrent cause or the approximate cause theory that is very applicable here in property insurance applied. And it's recognized in the policy in the radiation contamination exclusion where they specifically say that kind of contamination is not covered regardless of any series or concurrent causes. Let's call it a close there. We thank both sides for argument this morning. Your submissions will take the case under advisement. We'll stand in brief recess.